**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION**

| | |
|---|---|
| MICHAEL HERN and DEBRA PAYNE, for themselves, as private attorneys general, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC<br><br>Defendant. | Case No. 5:24-cv-00236<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Michael Hern and Debra Payne, for themselves, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and the investigation of their counsel, against Defendant Lowe's Home Centers, LLC ( "Lowe's" or "Defendant"):

## I.    INTRODUCTION AND SUMMARY

1.    Lowe's represents itself as a home improvement retailer. Lowe's operates Lowe's retail stores and its website, lowes.com, where it advertises, markets, and sells a wide variety of home-related goods throughout Washington and the United States. This lawsuit concerns only

particular products sold by Lowe's that it advertises with false discounts—specifically (1) Bali and Levolor branded blinds and shades; and (2) major appliances, e.g., refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers (collectively, the "Products").

2.　　For years, Lowe's has engaged in a massive and consistent false discount advertising scheme both in its retail stores and on its website by advertising perpetual discounts on the Products. These discounts are taken from Lowe's' advertised strikethrough reference prices for the Products. Lowe's represents these reference prices to be Lowe's' regular and normal prices of the Products, from which the advertised discounts are calculated.

3.　　Lowe's' advertised discounts and reference prices are false because Lowe's advertises perpetual discounts off the Products, and thus rarely if ever offers the Products at their advertised reference price.

4.　　Lowe's' deceptive pricing scheme is intended to trick consumers into believing that its Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain. Lowe's perpetrates this illegal scheme in order to induce consumers to purchase the Products and to charge more for the Products than it otherwise could have charged.

5.　　Lowe's' false discount advertising harms consumers like Plaintiffs by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. Customers do not enjoy the actual discounts Lowe's promises them, and the items are not in fact worth the amount that Lowe's represents to them. Lowe's' deceptive pricing scheme also artificially increases the demand for the Products and causes all customers, including Plaintiffs and Class members, to pay price premiums to Lowe's.

6.　　Lowe's' false discount advertising violates the Washington Consumer Protection Act (the "CPA"), RCW 19.86.

7.　　Plaintiffs bring this lawsuit for themselves and on behalf of a class of Washington consumers who purchased from Lowe's one or more Products advertised with a discount.

Plaintiffs seek damages (which may be trebled) for themselves and for each of the Washington class members. Additionally, Plaintiffs, acting as private attorneys general, seek public injunctive relief to protect the general public of Washingtonians by enjoining Lowe's from engaging in the unlawful false advertising scheme alleged herein.

## II.      **THE PARTIES**

8.      Plaintiff Michael Hern is a citizen and resident of the city of Duvall, in King County, Washington.

9.      Plaintiff Debra Payne is a citizen and resident of the city of Port Orchard, in Kitsap County, Washington.

10.     Defendant Lowe's Home Centers, LLC is a limited liability company incorporated in North Carolina with its principal place of business at 1000 Lowes Blvd, Mooresville, North Carolina, 28117. Lowe's Home Centers, LLC owns and operates over 2,000 Lowe's brick-and-mortar retail stores throughout the United States, including 35 in Washington. Lowe's Home Centers, LLC also owns and operates the Lowe's website, lowes.com.

## III.     **JURISDICTION AND VENUE**

11.     **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from Lowe's.

12.     **Personal Jurisdiction.** This Court has personal jurisdiction over Lowe's because, without limitation: (1) Lowe's is headquartered in this District; (2) Lowe's is incorporated in North Carolina; and (3) Lowe's is authorized to do business and regularly conducts business in this District.

13.     **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Lowe's is headquartered in this District, and the claims alleged herein are based on decisions and actions by Lowe's which took place in this District.

## IV.   LOWE'S' FALSE DISCOUNT ADVERTISING SCHEME

14.     Lowe's operates Lowe's retail stores and its website, lowes.com, where it advertises, markets, and sells a wide variety of home-related goods throughout Washington and the United States. Lowe's sells Products from national brands, as well as exclusive Products that are only available from Lowe's.

15.     For years, Lowe's has engaged in a massive and consistent false discount advertising scheme in its retail stores and on its website concerning the Products. Specifically, Lowe's advertises perpetual discounts on the Products. These discounts are taken from Lowe's' advertised strikethrough reference prices for the Products, which are presented as Lowe's' own regular selling prices for the Products. However, unbeknownst to its customers, Lowe's' discounts are never-ending, and the Products are never or almost never offered at the supposed regular price. Lowe's perpetrates this illegal scheme in order to induce consumers to purchase the Products and to increase the amount it can charge for the Products.

16. **Bali and Levolor Shades and Blinds.** For example, Lowe's advertised a supposedly limited time sale of 35% off of Bali shades and 20% off Bali blinds for the period September 12, 2024 through October 2, 2024, both in-store and online. See the photo and screenshot below at **Figure 1**.

**Figure 1:   Limited-Time "Sale" of Bali Shades & Blinds From 9/12/24 – 10/2/24**

**Lowe's Retail Store**
(Photo taken 9/26/2024)

**Lowe's Website**
(Screenshot taken 9/26/2024)



17. However, this sale and the advertised discounts were fictitious; in fact Lowe's nearly always offered the Bali blinds and shades for <u>at least</u> 20% to 35% off, such that the discount was not the advertised "Special Value" at all.

18. For instance, as the photo above shows, Lowe's advertised that the Bali sale ended on October 2, 2024. Yet starting October 3, 2024, Lowe's replaced the 20% to 35% off Bali "sale" with a new 30% to 50% off Bali "sale." See the photo and screenshot below at **Figure 2**.

- 5 -

**Figure 2: Bali "Sale" Ending 10/2/2024 Replaced With Bigger "Sale" Ending 10/16/2024**
(20–35% Off sale replaced with 30–50% Off sale on 10/3/24)

Lowe's Retail Store Signage
(Photo taken 10/9/2024)

Lowe's Website
(Screenshot taken 10/9/2024)



19.     And then, when this next 30%–50% off sale on Bali Blinds and Shades expired on October 16, 2024, Lowe's simply extended the sale, with a new end date of October 30, 2024.

20.     Thus, a Lowe's customer who was induced to purchase Bali shades on September 26, 2024, because he or she did not want to miss out on the supposedly limited time 35% off sale, actually paid more than the customer would have paid if he or she had waited until the sale was supposedly over. The customer could have waited a week and gotten 50% off the reference price (instead of only 35% off) of the shades if the customer had not been tricked by Lowe's. Meanwhile, in all instances, the amount of the advertised discount was false because Lowe's never sold the shades at the advertised reference price.

21.     Lowe's advertises perpetual sales for all of its Bali and Levolor branded blinds, typically between 20% to 50% off. Below at **Figure 3** is a table showing how Lowe's advertised back-to-back sales events for Bali and Levolor blinds and shades for over a month straight, from July 31, 2022, to September 14, 2022. The table is followed by screenshots of Lowe's' website

- 6 -

demonstrating the sales. Consistent with Lowe's' standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.

**Figure 3:   Table Showing Perpetual Sales of Bali and Levolor Blinds**

| "Limited Time" Sale Period | Advertised Sale Event Discount |
|---|---|
| 7/31/22 – 8/10/22 | Up to 30% Off Bali and Levolor blinds and shades |
| 8/11/22 – 8/24/22 | Up to 35% Off Bali and Levolor blinds and shades |
| 8/25/22 – 9/07/22 | 40% Off Levolor blinds and shades |
| 8/25/22 – 9/14/22 | Up to 30% Off Bali blinds and shades |

22.     Below are Lowe's website screenshots corresponding to the continuous sale events in table above (red boxes added).

**Advertised Limited-Time Sale of Bali & Levolor Products Ending 8/10/2022**
(Screenshot taken 7/31/2022)



### Sale Ending 8/10/2022 Replaced with Bigger "Sale" Ending 8/24/2022
(Screenshot taken 8/11/2022)



### Sale Ending 8/24/2022 Replaced With Sales Ending 9/7/2022 & 9/14/2022
(Screenshot taken 8/25/2022)



23.     Lowe's advertises the perpetual discounts and "savings" on the blinds and shades category webpages as shown above, and also on the product list pages and the individual product pages as shown below. On its product list pages and on the individual product pages, Lowe's advertises the purported regular price with a strikethrough (e.g., $138.27), and displays a specific dollar amount of promised savings in green text (e.g., "Save $41.48"). The "savings" is calculated by applying the advertised percentage off sale (e.g., the 30% Off Bali Blinds and Shades shown in the screenshot above) to the strikethrough regular price.

**Product List Page Displaying Discounted Bali Blinds & Shades – 9/12/2024**



**Product List Page Displaying Discounted Levolor Blinds & Shades – 9/12/2024**



24.     In the online shopping cart, Lowe's advertises the strikethrough regular price, the dollar amount "savings," and the bogus sale "Ends" date. Lowe's also prefaces the strikethrough price with the word "Was" (e.g., "Was $307.84"), to further indicate that the higher strikethrough price was Lowe's' previous and usual selling price for the Product. See the screenshots below.

**Lowe's Online Shopping Cart – 9/17/2024**



Zoom In of Pricing and Discount Representations (Including "Was" Price)

25.     However, all of these sale advertisements and promises of savings for the Bali and Levolor blinds and shades (the "Products") were false. Lowe's never previously offered or sold the Products at the advertised strikethrough reference price (i.e., the "Was" price). Likewise, Lowe's' advertisements that the discounts were for a limited time, and that they would end on a

certain date, were false, because the Products were in fact perpetually on sale and Lowe's <u>never</u> offered the Products at the full price.

26. **Major Appliances.** Lowe's similarly advertises perpetual "sales" on major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers (also, the "Products").

27. Lowe's typically advertises discounts on its major appliances by advertising (on the in-store price placards affixed to the Products, and on its website product pages) a lower discounted price, next to a purported regular price with a strikethrough (the "reference price"). Lowe's also advertises a "SAVE $xx" dollar amount beside the supposedly discounted selling price. In its retail stores, Lowe's also prefaces the strikethrough price with the word "WAS" (e.g., "WAS ~~$1499~~"), to further indicate that the higher strikethrough price was Lowe's' previous and usual selling price for the product. Likewise, on its website, Lowe's describes the reference price as the "Was" price in in the online shopping cart.

28. The individual appliance advertisements also typically state or indicate that they are for a limited time. On the price placards that Lowe's affixes to the appliances in its retail stores, Lowe's states the discounted price is "Valid thru mm/dd/yyyy" (e.g., "Valid thru 9/24/2024"). On its website, Lowe's similarly states the discounted price for the appliance "Ends mm dd" (e.g., "Ends Sep 24"). Lowe's advertises that its discounts are for a limited time, with a certain end date, in order to induce its customers to purchase the appliances immediately so that they do not miss out on the supposed "sale."

29. Below at **Figure 4** are examples of Lowe's' discount advertising for major appliances both in-store and online, which demonstrate Lowe's' advertising of reference prices, sale prices, dollar savings, and sale end dates. The top image is a photo taken in a Lowe's store on September 26, 2024, of an in-store price placard for an LG Dishwasher. The bottom image is a screenshot of the Lowe's website product page for that same LG Dishwasher taken on that same day.

**Figure 4:   Advertisements for LG 24-in Front Control Built-In Dishwasher**
           (Item No. 5686041)

**Lowe's Retail Store**
**(9/26/2024)**



**Lowe's Website**
**(9/26/2024)**



30.      However, these sale advertisements were false. In fact, Lowe's <u>never</u> previously sold the LG dishwasher at the advertised "WAS" reference price of $829.00. Lowe's <u>always</u> offered and sold the dishwasher at a much lower price, typically between $449.00 and $549.00. And Lowe's' statement that the discounted price was for a limited time ending on October 2, 2024 ,was also false. For example, starting on October 3, 2024 (the day after the sale purportedly ended), Lowe's continued advertising the LG dishwasher at the same $499.00 discounted price, but now advertised a sale end date of October 16, 2024.

31.      Below at **Figure 5** is a historical price table showing how Lowe's advertised back-to-back sale periods for this same LG dishwasher (Item No. 5686041) in months prior. Consistent with Lowe's' standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.



**Figure 5:  Table Showing Perpetual "Discounts" on LG Dishwasher**
(Item No. 5686041)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 4/25/24 – 5/01/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/02/24 – 5/08/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 5/09/24 – 5/15/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 5/16/24 – 5/22/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/23/24 – 5/29/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 5/30/24 – 6/05/24 | ~~$829.00~~ | $499.00 | "Save $330.00" |
| 6/06/24 – 6/19/24 | ~~$829.00~~ | $549.00 | "Save $280.00" |
| 6/20/24 – 6/22/24 | ~~$829.00~~ | $449.00 | "Save $380.00" |
| 6/23/24 – 7/17/24 | ~~$829.00~~ | $509.00 | "Save $320.00" |

32.      Lowe's' advertised sales and discounts for the LG Dishwasher were false. Likewise, the advertised limited-time nature of the sales (e.g., the "Valid thru" dates and sale "Ends" dates) were false. Lowe's always offered the dishwasher for hundreds of dollars less than the supposed "WAS" strikethrough price.

33.     Lowe's' false discount advertising for the LG Dishwasher is typical and representative of the false discount advertising Lowe's perpetrates for all of its "discounted" major appliances.

34.     For example, below at **Figure 6** is an in-store photo taken on September 24, 2024, of the price placard for a Whirlpool Electric Range (Item No. 803967), which was similarly advertised with false discounts and false limited-time sale advertising.

**Figure 6:    In-Store Advertisement for Whirlpool Electric Double-Oven Range**
            (Item No. 803967)

**Lowe's Retail Store**
**(9/24/2024)**



35.     However, these discount advertisements were false. In fact, Lowe's <u>never</u> previously sold the Whirlpool Electric Range at the advertised "WAS" reference price of $1899.00. Lowe's <u>always</u> offered and sold the dishwasher at a much lower price, typically between $1199.00 and $1599.00. And Lowe's' statement that the discounted price was for a

- 14 -

limited time ending on October 2, 2024, was also false. Lowe's has continued to perpetually advertise the electric range at a similar discount with continually extended "Valid thru" dates, through the date of this Complaint.

36.    Below at **Figure 7** is a historical price table showing how Lowe's advertised back-to-back sale periods for this same Whirlpool Electric Range (Item No. 803967) in months prior. Consistent with Lowe's' standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.



**Figure 7: Perpetual "Discounts" on Whirlpool Electric Double-Oven Range** (Item No. 803967)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$1,899.00~~ | $1,299.00 | "Save $600.00" |
| 4/25/24 – 5/1/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/2/24 – 5/8/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/9/24 – 5/15/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/16/24 – 5/22/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/23/24 – 5/29/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 5/30/24 – 6/5/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 6/6/24 – 7/10/24 | ~~$1,899.00~~ | $1,499.00 | "Save $400.00" |
| 7/11/24 – 7/21/24 | ~~$1,899.00~~ | $1,599.00 | "Save $300.00" |

37.    Lowe's' false discount advertising for the LG Dishwasher and the Whirlpool Electric Range described above is typical and representative of the false discount advertising Lowe's perpetrates for all of its "discounted" major appliances. Below at **Figure 8** through **Figure 10** are historical price tables demonstrating similar perpetual false discounting by Lowe's for other types of major appliances such as refrigerators, washer/dryers, and microwaves.



**Figure 8:  Perpetual "Discounts" on Frigidaire 18.3-cu ft Refrigerator**
  (Item No. 5686031)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 4/25/24 – 5/01/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 5/02/24 – 5/08/24 | ~~$799.00~~ | $629.00 | "Save $170.00" |
| 5/09/24 – 5/15/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 5/16/24 – 5/22/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 5/23/24 – 5/29/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 5/30/24 – 6/05/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 6/06/24 – 6/10/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 6/11/24 | ~~$799.00~~ | $579.00 | "Save $222.00" |
| 6/12/24 – 7/10/24 | ~~$799.00~~ | $599.00 | "Save $200.00" |
| 7/11/24 | ~~$799.00~~ | $629.00 | "Save $170.00" |
| 7/12/24 – 7/21/24 | ~~$799.00~~ | $629.00 | "Save $170.00" |

 **Figure 9:  Perpetual "Discounts" on Whirlpool Top-Load Washer**
(Item No. 782472)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 4/25/24 – 5/01/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/02/24 – 5/08/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/09/24 – 5/15/24 | ~~$699.00~~ | $518.00 | "Save $181.00" |
| 5/16/24 | ~~$699.00~~ | $448.00 | "Save $251.00" |
| 5/17/24 – 5/22/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 5/23/24 – 5/29/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 5/30/24 – 6/05/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 6/06/24 – 6/25/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |
| 6/26/24 – 7/10/24 | ~~$699.00~~ | $448.00 | "Save $251.00" |
| 7/11/24 – 7/17/24 | ~~$699.00~~ | $499.00 | "Save $200.00" |
| 7/18/24 – 7/21/24 | ~~$699.00~~ | $498.00 | "Save $201.00" |

 **Figure 10: Perpetual "Discounts" on Samsung Microwave**
(Item No. 5760681)

| "Sale" Period | Strikethrough "WAS" Price | Sale Price | Advertised Savings |
|---|---|---|---|
| 4/18/24 – 4/24/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 4/25/24 – 5/1/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/2/24 – 5/8/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/9/24 – 5/15/24 | ~~$459.00~~ | $329.00 | "Save $130.00" |
| 5/16/24 – 5/22/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 5/23/24 – 5/29/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 5/30/24 – 6/5/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 6/6/24 – 7/10/24 | ~~$459.00~~ | $299.00 | "Save $160.00" |
| 7/11/24 – 7/21/24 | ~~$459.00~~ | $332.00 | "Save $127.00" |

38.     Lowe's also prominently advertises continuous back-to-back "sales events" for its major appliances in its stores and on its website. For example, Lowe's advertised a limited-time "Up To 35% Off" sale on major appliances for the period September 26, 2024, through October 23, 2024, both in-store and online. See the photo and screenshot below at **Figure 11**.

**Figure 11: "Get Up to 35% Off" Sale Event on Major Appliances, 9/26/24 – 10/23/24**

**Lowe's Retail Store Signage**
(Photo taken 10/9/2024)



**Lowe's Website Homepage**
(Screenshot taken 9/26/2024)

39.     However, the advertised special sale event was phony; in fact Lowe's <u>always</u> offered its major appliances for at least 30% to 40% off, such that the advertised discounts were false.

40.     Below at **Figure 12** is a table showing how Lowe's advertised back-to-back appliances sales events for over six months straight, from April 4, 2024, to October 23, 2024. The data, like the other evidence presented in this Complaint, was collected as part of counsel's investigation of the Lowe's website and from visits to Lowe's stores. Consistent with Lowe's'

- 19 -

standard practice and policy, when one "sale" expired it was either extended or another similar sale immediately took its place.

**Figure 12: Table Showing Perpetual Major Appliances Sales Events**

| Sale Period | Advertised Sale Event Discount | Stated Sale End Date |
|---|---|---|
| 1/04/24 – 1/24/24 | Up to 35% Off Select Major Appliances | "Offer ends 1/24/24" |
| 1/25/24 – 2/07/24 | Up to 35% Off Select Major Appliances | "Offer ends 2/07/24" |
| 2/08/24 – 2/28/24 | Up to 35% Off Select Major Appliances | "Offer ends 2/28/24" |
| 2/29/24 – 3/20/24 | Up to 35% Off Select Major Appliances | "Offer ends 3/20/24" |
| 3/21/24 – 4/03/24 | Up to 30% Off Select Major Appliances | "Offer ends 4/03/24" |
| 4/04/24 – 5/01/24 | Up to 35% Off Select Major Appliances | "Offer ends 5/01/24" |
| 5/02/24 – 5/15/24 | Up to 35% Off Select Major Appliances | "Offer ends 5/15/24" |
| 5/16/24 – 6/18/24 | Up to 35% Off Select Major Appliances | "Offer ends 6/18/24" |
| 6/19/24 – 7/10/24 | Up to 40% Off Select Major Appliances | "Offer ends 7/10/24" |
| 7/11/24 – 8/07/24 | Save On Select Major Appliances | "Offer ends 8/07/24" |
| 8/08/24 – 8/21/24 | Up to 35% Off Select Major Appliances | "Offer ends 8/21/24" |
| 8/22/24 – 9/11/24 | Up to 40% Off Select Major Appliances | "Offer ends 9/22/24" |
| 9/12/24 – 9/25/24 | Up to 35% Off Select Major Appliances | "Offer ends 9/25/24" |
| 9/26/24 – 10/23/24 | Up to 35% Off Select Major Appliances | "Offer ends 10/23/24" |

41.     Lowe's advertises the perpetual discounts and sales events on its major appliances in its stores, on its website homepage (see Figure 11 above), and on its major appliances category webpages. And as described above (see Figures 4 and 6), Lowe's advertises false reference prices (the "WAS" strikethrough price) adjacent to false statements of savings ("SAVE $xx") and a false sale end date, in order to trick consumers into falsely believing that if they do not act now, they will miss out on a special limited-time "deal." As a result of Lowe's' fraud, customers pay more for the Products than they otherwise would have paid.

42.     In the online shopping cart, Lowe's advertises the strikethrough regular price, the dollar amount "savings," and the bogus sale "Ends" date. Lowe's also prefaces the strikethrough price with the word "Was" (e.g., "Was $559.00"), to further indicate that the higher

- 20 -

strikethrough price was Lowe's' previous and usual selling price for the Product. See the screenshots below.

**Lowe's Online Shopping Cart – 9/23/2024**



Zoom In of Pricing and Discount Representations (Including "Was" Price)



43.     However, all of these sale advertisements and promises of savings by Lowe's for its major appliances, like its advertisements for Bali and Levolor blinds and shades, were false. Lowe's never previously offered or sold the Products at the advertised reference price (i.e., the "Was" price). Likewise, Lowe's' advertisements that the discounts were for a limited time, and that they would end on a certain date, were false, because the Products were in fact perpetually on sale and Lowe's never offered the Products at the full price.

- 21 -

## V. PLAINTIFFS' ALLEGATIONS ARE BASED ON THEIR COUNSEL'S COMPREHENSIVE INVESTIGATION INTO LOWE'S PRACTICES

44.     Plaintiffs' allegations concerning Lowe's' false discount advertising are based in part on Plaintiffs' counsel's investigation of the Lowe's website using the Internet Archive's Wayback Machine (available at www.archive.org).[1] Plaintiffs' allegations are also based on daily screenshots and pricing data compiled from Plaintiffs' counsel's own scraping of the Lowe's website with a proprietary software program. Plaintiffs' counsel also investigated Lowe's' in-store practices by regularly visiting Lowe's retail stores.

45.     Counsel's investigation confirms that Lowe's' perpetual sales on the Products have persisted on the Lowe's website continuously since at least April 2021 (and likely earlier). Plaintiffs' counsel examined screenshots of over a hundred randomly selected days of the Lowe's website from the Internet Archive's Wayback Machine, going back to 2021. On every randomly selected day during this period, the Lowe's website displayed purportedly time-limited discounts for the Products. Likewise, counsel's analysis of the daily screenshots and pricing data compiled with counsel's proprietary software program shows that Lowe's' perpetual "sales" and false discounts continue to this day.

46.     Also based on the investigation of Plaintiffs' counsel, Lowe's offers and advertises its Products with identical reference prices and at substantially the same sale prices both on the Lowe's website and in its retail stores. Likewise, Lowe's' advertised "sale events" and sale "end" dates for its major appliances and Bali and Levolor blinds and shades are substantially the same in-store and online.

47.     In fact, Lowe's effectively treats its online and in-store sales channels as the same. Customers can make purchases through the Lowe's website and pick up the items in-store. Lowe's also encourages its customers, while shopping in-store, to view Lowe's' website and use Lowe's' smartphone app to view and learn more about the Products.

---

[1] The Internet Archive is an internet library that archives webpages. For more information: https://archive.org/about/.

- 22 -

## VI. LOWE'S' FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES WASHINGTON LAW

48.     Decades of academic research has established that the use of reference prices and discount advertising like that utilized by Lowe's materially impacts consumers' behavior. A reference price (e.g., the strikethrough "Was" reference price advertised by Lowe's from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

49.     When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Lowe's, advertise their products with inflated false reference prices and false discounts. The false reference prices deceive consumers, deprive consumers of a

---

[2] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrasekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

50.     As a direct and proximate result of Lowe's' false reference prices and false discounts, Plaintiffs and Class members were harmed and lost money or property.

51.     First, Plaintiffs and Class members were harmed because they would not have purchased the Products at the prices they paid had they known that the discounts were fake and that the Products had not in fact been regularly offered at the higher listed price. *See Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wash. App. 62, 302 P.3d 523, 528–29 (2013) (holding that the plaintiff stated a claim under the CPA based on her allegations that "she would not have given her money to [defendants] but for their [false] advertising," with the injury being the money she spent); *see also Fitzgerald v. Shade Store, LLC*, 2024 WL 3540540, at *2 (W.D. Wash. July 25, 2024) ("Inducing a plaintiff into spending money she otherwise would not have spent, based on a misrepresentation, is clearly a cognizable injury under the CPA.") (internal quotation marks omitted); *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1061 (W.D. Wash. 2020) (same).

52.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

53.     Additionally, just as Lowe's intended, Lowe's' false advertising of limited-time sales events (which were in fact perpetual) created a false sense of urgency, which made consumers more likely to make a purchase.

54.     Second, Plaintiffs and Class members were harmed because they did not receive the benefits of their bargain. Plaintiffs and Class members did not enjoy the actual discounts that Lowe's represented and promised to them. Plaintiffs and Class members did not receive Products

- 24 -

that were worth the inflated amount that Lowe's represented to them. The Products did not regularly sell for, and did not have a market value of, the fictitious strikethrough reference price advertised by Lowe's.

55.     Third, Plaintiffs and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Lowe's' deceptive pricing scheme. Lowe's' false discount advertising scheme artificially increases consumer demand for Lowe's' Products, which shifts the demand curve and allows Lowe's to charge more for its Products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. Lowe's' false advertising scheme enabled Lowe's to charge everyone more for all of the Products by artificially stimulating demand based on false pretenses. *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Lowe's would have had to charge less for the Products in order to enjoy the same level of demand.

56.     In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

57.     Courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have

previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

58.    Washington law, as well as federal regulations which guide Washington law, prohibit false reference pricing practices such as those perpetrated by Lowe's.

59.    The Washington Consumer Protection Act (the "CPA"), RCW 19.86, is Washington's principal consumer protection statute.

60.    "The consumer protection provisions of the CPA were modeled after Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45." Washington Pattern Jury Instruction No. 310.00 (Consumer Protection Act — Introduction).

61.    The purpose of the CPA "is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920.

62.    The CPA broadly declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

63.    Lowe's' false discount advertising scheme constitutes unfair methods of competition and/or unfair or deceptive acts or practices which directly affect the people of Washington, and which have injured Plaintiffs, the members of the Class, honest competing businesses, the integrity of the retail marketplace, and the general public.

64.    There are a number of ways for an act or practice to be unfair or deceptive.

65.    An act or practice is <u>deceptive</u> if it is "likely to mislead a reasonable consumer." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 50, 204 P.3d 885, 895 (2009). Further, "[t]he capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among us." *Keithly v. Intelius*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011); *see also Panag*, 204 P.3d at 895 (same).

66.    Acts or practices are <u>unfair</u> under the "substantial injury test," if they (1) cause substantial injury to consumers (2) which is not reasonably avoidable by consumers themselves

and (3) not outweighed by countervailing benefits to consumers or to competition. *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024).

67.     Acts or practices are also <u>unfair</u> if they are "in violation of public interest." *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024); *see also Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 787, 295 P.3d 1179, 1187 (2013) (same).

68.     Additionally, the CPA states that, in determining whether an act is unlawful under the CPA, courts should look for guidance to how the Federal Trade Commission ("FTC") has dealt with similar subject matter. "It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters …" RCW 19.86.920.

69.     The FTC's regulations prohibit false or misleading "former price comparisons." 16 C.F.R § 233.1. For example, an advertised former price is false when it is "an artificial, inflated price [that] was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R § 233.1(a).

70.     As alleged in detail above, Lowe's advertised reference prices and discounts violate Washington law because, based on the investigation of Plaintiffs' counsel, Lowe's advertised reference prices are inflated and fictitious, and Lowe's advertised percentage-off and dollars-off discounts are false. Lowe's reference prices and discounts are false because Lowe's advertises perpetual discounts off the Products, and thus rarely, if ever, offers the Products at their advertised reference price. Lowe's also advertises false "limited-time" sales and sale events.

71.     The false reference price and false discount representations by Lowe's were material to the decisions of consumers to purchase each Product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant limited-time savings if they purchased these Products, and consumers purchased these Products on the basis of these representations in order to enjoy the purported discounts.

72.     Lowe's' false reference price and false discount representations are likely to mislead a reasonable consumer, and in fact did mislead Plaintiffs.

73.     As detailed above, Lowe's' false reference price and false discount representations caused substantial injury to consumers. Consumers could not reasonably avoid these injuries because Lowe's' false advertising was hidden from consumers. And, Lowe's' false advertising has no countervailing benefits to consumers or to competition—let alone any that would outweigh the harm done.

74.     As detailed above, Lowe's' false reference price and false discount representations are in violation of public interest because they deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses. In addition to harming consumers, Lowe's' false advertising also negatively affects the integrity of competition in retail markets and harms honest competitors that sell the same or similar products or otherwise compete in the same market.

75.     Lowe's' marketing plan is to deceive its customers into believing that the Products are worth, and have a market value equal to, the inflated strikethrough reference price, and that the lower advertised sale price represents a special bargain.

76.     The false or misleading nature of Lowe's' reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

77.     As a direct and proximate result of Lowe's' acts and omissions, all Washington consumers who have purchased a Product from Lowe's that was advertised with a reference price or purported discount have been harmed and have lost money or property.

78.     Lowe's continues to advertise false reference prices and false discounts on the Products to this day. There is no reason to believe that Lowe's will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Lowe's were to cease its unlawful practices, Lowe's can and is likely to re-commence these unlawful practices.

79.     In acting toward consumers and the general public in the manner alleged herein, Lowe's acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiffs, the Class, and the public.

## VII.    PLAINTIFFS' FACTUAL ALLEGATIONS

### Plaintiff Michael Hern

80.     Plaintiff Michael Hern is, and at all relevant times has been, a citizen and resident of the city of Duvall, in King County, Washington.

81.     Mr. Hern is a victim of Lowe's false discount advertising scheme.

82.     As detailed above, Lowe's' false discounting practices have been ongoing since at least April 2021. During this time, Mr. Hern has purchased Products from Lowe's which were advertised with false reference prices and false discounts.

83.     **Blinds Purchase.** For example, on April 19, 2022, Mr. Hern visited the Lowe's retail store located at 2505 Pacific Avenue, Everett, Washington 98201-5302, to shop for blinds.

84.     While browsing the blinds selection in the Lowe's store, Mr. Hern viewed pricing and discount representations similar to those described in detail above (e.g., see Paragraphs 16, 18–19). For example, Mr. Hern viewed representations that the Bali Essentials Vinyl Blinds (the "Bali Blinds") he was looking at were part of a limited-time sales event and were 20% off through 5/4/2022.

85.     Based on Lowes's' representations, Mr. Hern believed he needed to act fast and purchase the Bali Blinds now to take advantage of the special sale before they returned to their normal full price on May 5, 2022.

86.     After choosing the Bali Blinds, Mr. Hern worked with a Lowe's associate to select the measurements and other options. The Lowe's associate then printed out and gave Mr. Hern a quote showing that each of the Bali Blinds had a regular price, i.e., "Item Price," of $78.00; that there was a "Discount" of "20% Off Thru 5/4," which resulted in a "-$15.60" discount; and that the selling price after the discount was $62.40 for each of the Bali Blinds (or $124.80 for both).

87. Below is a photo of a printed quote that was given to Mr. Hern.

**Photo of Printed Quote From 4/19/2022**



88. Relying on Lowe's' representations, Mr. Hern reasonably believed that the Bali Blinds were normally offered and sold by Lowe's for the $78.00 Item Price. Mr. Hern reasonably believed that the Bali Blinds were thereby worth and had a market value of $78.00. Mr. Hern reasonably believed that the advertised sale price of $62.40 represented a special and unusual bargain, where Lowe's was temporarily offering ("Thru 5/4") the Bali Blinds at $15.60 off (20% off) the regular and normal selling price of $78.00. Relying on Lowe's' representations, Mr. Hern purchased two of the customized Bali Blinds.

89. However, Lowe's' pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. Hern, Lowe's had never offered the Bali Blinds at their advertised regular price of $78.00. The Bali Blinds were not in fact worth the $78.00 price that Lowe's had led him to believe. Instead, Lowe's had always advertised the Bali Blinds at a significant discount from their purported regular price.

90. **Refrigerator Purchase.** A year later, on May 27, 2023, Mr. Hern visited the same Lowe's retail store located at 2505 Pacific Avenue, Everett, Washington 98201-5302, to shop for a refrigerator.

91. While browsing the selection of refrigerators in the Lowe's store, Mr. Hern viewed pricing and discount representations similar to those described in detail above (e.g., see Paragraphs 26–29, 34, 38).

- 30 -

92.     For example, Mr. Hern viewed the price placard affixed to a Frigidaire 18.3-cu ft Top-Freezer Refrigerator, Item No. 4882705 (the "Frigidaire Refrigerator"). The placard stated that the Frigidaire Refrigerator was currently on sale at a "SPECIAL VALUE" of $599; that the Frigidaire Refrigerator "WAS $799"; and that the customer would "SAVE $200" by buying the Frigidaire Refrigerator now. The placard also stated that this offer was only valid for a limited time.

93.     Relying on Lowe's' representations, Mr. Hern reasonably believed that the Frigidaire Refrigerator was normally offered and sold by Lowe's for the $799 "WAS" price. Mr. Hern reasonably believed that the Frigidaire Refrigerator was thereby worth and had a market value of $799. Mr. Hern reasonably believed that the advertised "SPECIAL VALUE" sale price of $599 represented a special and unusual bargain, where Lowe's was temporarily offering the Frigidaire Refrigerator at $200 off (25% off) the regular and normal selling price of $799. Relying on Lowe's' representations, Mr. Hern purchased the Frigidaire Refrigerator.

94.     However, Lowe's' pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Mr. Hern, Lowe's had never offered the Frigidaire Refrigerator at its advertised regular price of $799. The Frigidaire Refrigerator was not in fact worth the $799 price that Lowe's had led him to believe. Instead, Lowe's had always advertised the Frigidaire Refrigerator at a significant discount from its purported regular price.

95.     Lowe's' advertised reference prices and discounts were material misrepresentations and inducements to Mr. Hern's purchases.

96.     Mr. Hern reasonably relied on Lowe's' material misrepresentations regarding the advertised reference prices and discounts. If Mr. Hern had known the truth, he would not have purchased the Products at the prices he paid.

97.     As a direct and proximate result of Lowe's' acts and omissions, Mr. Hern was harmed, suffered an injury-in-fact, and lost money or property.

98.     When Mr. Hern shopped at Lowe's, he had no suspicion that Lowe's' advertised reference prices and discounts were false. Lowe's gave Mr. Hern no reason to be suspicious.

- 31 -

Mr. Hern first learned of Lowe's' false advertising scheme in September 2024 when his attorneys told him about Lowe's' unlawful conduct and informed him that he was a victim of the scheme. Prior to this, Mr. Hern did not know or suspect that Lowe's was engaging in a false discount advertising scheme or that he had been a victim of the scheme.

99.     Mr. Hern has a legal right to rely now, and in the future, on the truthfulness and accuracy of Lowe's' representations regarding the advertised reference prices and discounts for its Products.

100.    Mr. Hern faces an imminent threat of future harm. Mr. Hern would purchase Products from Lowe's again in the future if he could have confidence regarding the truth of Lowe's' price and discount representations. But without an injunction, Mr. Hern has no realistic way of knowing which, if any, of Lowe's' reference prices, discounts, and sales for the Products are true.

101.    Mr. Hern will be harmed if, in the future, he is left to guess as to whether Lowe's is providing a legitimate sale or not, and whether its Products are actually worth the amount that Lowe's is representing.

102.    If Mr. Hern were to purchase Products again from Lowe's without Lowe's having changed its unlawful and deceptive conduct alleged herein, Mr. Hern would be harmed on an ongoing basis and/or would be harmed once or more in the future.

103.    The deceptive practices and policies alleged herein, and experienced directly by Mr. Hern, are not limited to any single Product. Rather, Lowe's' deceptive advertising and sales practices, which advertise and state false reference prices and false percentage-off and dollar-off discounts, were, and continue to be, systematic and pervasive across Lowe's' major appliances and Bali and Levolor blinds and shades.

**Plaintiff Debra Payne**

104.    Plaintiff Debra Payne is, and at all relevant times has been, a citizen and resident of the city of Port Orchard, in Kitsap County, Washington.

105.    Ms. Payne is a victim of Lowe's' false discount advertising scheme.

- 32 -

106.    As detailed above, Lowe's false discounting practices have been ongoing since at least April 2021. During this time, Ms. Payne has purchased Products from Lowe's which were advertised with false reference prices and false discounts.

107.    For instance, on April 3, 2021, Ms. Payne visited the Lowe's retail store located at 150 SW Sedgwick Rd, Port Orchard, Washington 98367, to shop for several major appliances.

108.    While browsing the selection of major appliances in the Lowe's store, Ms. Payne viewed pricing and discount representations similar to those described in detail above (e.g., see Paragraphs 26–29, 34, 38).

109.    **Refrigerator Purchase.** For example, that day on April 3, 2021, Ms. Payne viewed the price placard affixed to a Whirlpool 22.07-cu ft Bottom-Freezer Refrigerator with Ice Maker (White) ENERGY STAR, Item No. 52246 (the "Whirlpool Refrigerator"). The placard stated that the Whirlpool Refrigerator was currently on sale at a "SPECIAL VALUE" of $1349.99; that the Whirlpool Refrigerator "WAS $1999"; and that the customer would "SAVE $649.01" by buying the Whirlpool Refrigerator now. The placard also stated that this offer was only valid for a limited time.

110.    Relying on Lowe's' representations, Ms. Payne reasonably believed that the Whirlpool Refrigerator was normally offered and sold by Lowe's for the $1999 "WAS" price. Ms. Payne reasonably believed that the Whirlpool Refrigerator was thereby worth and had a market value of $1999. Ms. Payne reasonably believed that the advertised "SPECIAL VALUE" sale price of $1349.99 represented a special and unusual bargain, where Lowe's was temporarily offering the Whirlpool Refrigerator at $649.01 off (33% off) the regular and normal selling price of $1999. Relying on Lowe's' representations, Ms. Payne purchased the Whirlpool Refrigerator.

111.    However, Lowe's' pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Payne, Lowe's had never offered the Whirlpool Refrigerator at its advertised regular price of $1999. The Whirlpool Refrigerator was not in fact worth the $1999 price that Lowe's had led her to believe. Instead, Lowe's had always advertised the Whirlpool Refrigerator at a significant discount from its purported regular price.

- 33 -

112. **Gas Range Purchase.** That same day on April 3, 2021, in the same Lowe's store, Ms. Payne also viewed the price placard affixed to an Amana 20-in 4 Burners 2.6-cu ft Freestanding Natural Gas Range (White), Item No. 183009 (the "Amana Range"). The placard stated that the Amana Range was currently on sale at a "SPECIAL VALUE" of $599.99; that the Amana Range "WAS $~~777~~"; and that the customer would "SAVE $177.01" by buying the Amana Range now. The placard also stated that this offer was only valid for a limited time.

113. Relying on Lowe's' representations, Ms. Payne reasonably believed that the Amana Range was normally offered and sold by Lowe's for the $777 "WAS" price. Ms. Payne reasonably believed that the Amana Range was thereby worth and had a market value of $777. Ms. Payne reasonably believed that the advertised "SPECIAL VALUE" sale price of $599.99 represented a special and unusual bargain, where Lowe's was temporarily offering the Amana Range at $177.01 off (23% off) the regular and normal selling price of $777. Relying on Lowe's' representations, Ms. Payne purchased the Amana Range.

114. However, Lowe's' pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Payne, Lowe's had never offered the Amana Range at its advertised regular price of $777. The Amana Range was not in fact worth the $777 price that Lowe's had led her to believe. Instead, Lowe's had always advertised the Amana Range at a significant discount from its purported regular price.

115. Lowe's' advertised reference prices and discounts were material misrepresentations and inducements to Ms. Payne's purchases.

116. Ms. Payne reasonably relied on Lowe's' material misrepresentations regarding the advertised reference prices and discounts. If Ms. Payne had known the truth, she would not have purchased the Products at the prices she paid.

117. As a direct and proximate result of Lowe's' acts and omissions, Ms. Payne was harmed, suffered an injury-in-fact, and lost money or property.

118. When Ms. Payne shopped at Lowe's, she had no suspicion that Lowe's' advertised reference prices and discounts were false. Lowe's gave Ms. Payne no reason to be

suspicious. Ms. Payne first learned of Lowe's' false advertising scheme in September 2024 when her attorneys told her about Lowe's' unlawful conduct and informed her that she was likely a victim of the scheme. Prior to this, Ms. Payne did not know or suspect that Lowe's was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

119.    Ms. Payne has a legal right to rely now, and in the future, on the truthfulness and accuracy of Lowe's' representations regarding the advertised reference prices and discounts for its Products.

120.    Ms. Payne faces an imminent threat of future harm. Ms. Payne would purchase Products from Lowe's again in the future if she could have confidence regarding the truth of Lowe's' price and discount representations. But without an injunction, Ms. Payne has no realistic way of knowing which, if any, of Lowe's' reference prices, discounts, and sales for the Products are true.

121.    Ms. Payne will be harmed if, in the future, she is left to guess as to whether Lowe's is providing a legitimate sale or not, and whether its Products are actually worth the amount that Lowe's is representing.

122.    If Ms. Payne were to purchase Products again from Lowe's without Lowe's' having changed its unlawful and deceptive conduct alleged herein, Ms. Payne would be harmed on an ongoing basis and/or would be harmed once or more in the future.

123.    The deceptive practices and policies alleged herein, and experienced directly by Ms. Payne, are not limited to any single Product. Rather, Lowe's' deceptive advertising and sales practices, which advertise and state false reference prices and false percentage-off and dollar-off discounts, were, and continue to be, systematic and pervasive across Lowe's' major appliances and Bali and Levolor blinds and shades.

## CLASS ALLEGATIONS

124.    Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

125.    **Class Definition:** Plaintiffs seek to represent the following Class:

- 35 -

> **All persons who, while in Washington, within the applicable statute of limitations period, purchased from Lowe's one or more Products[3] advertised at a discount.**

126.    Specifically excluded from the Class are Lowe's and any entities in which Lowe's has a controlling interest, Lowe's' agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

127.    **Application of the Discovery Rule.** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which Lowe's first engaged in its unlawful false discounting practices. Based on counsel's investigation, Lowe's' false discount advertising practices have been ongoing since at least April 2021, and likely began much earlier. However, without discovery, Plaintiffs cannot determine what date, earlier than April 2021, that Lowe's first began advertising false discounts for the Products.

128.    "Under the discovery rule, a cause of action does not accrue—and as a result the statute of limitations does not begin to run—until the plaintiff knows, or has reason to know, the factual basis for the cause of action." *Cruson v. A.A.A.A., Inc.*, 140 Wash. App. 1012 (2007) (citation omitted). Plaintiffs and the members of the Class did not know, and could not have reasonably known, about Lowe's' unlawful conduct.

129.    When Plaintiffs shopped at Lowe's, they had no suspicion that Lowe's' advertised reference prices and discounts were false. Lowe's gave Plaintiffs no reason to be suspicious. Plaintiffs first learned of Lowe's' false discount advertising scheme in September 2024 when their attorneys told them about Lowe's' unlawful conduct and informed them that they were victims of the scheme. Prior to this, Plaintiffs did not know or suspect—and had no reason to suspect—that Lowe's was engaging in a false discount advertising scheme or that they had been victims of the scheme.

---

[3] "Products" are defined in this Complaint as Bali and Levolor blinds and shades, and major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

130. Likewise, Class members would not know or suspect that Lowe's was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable consumers would believe that Lowe's' pricing and discount representations were true. Reasonable consumers would believe that Lowe's' strikethrough reference prices (1) represent Lowe's' regular and normal prices that consumers had to pay for the Products; (2) represent Lowe's' recent former prices of the Products (that is, the prices at which the Products were regularly offered for sale before the limited-time offer went into effect); and (3) represent the Lowe's prices that consumers will have to pay for the Products when the sale ends. Reasonable consumers would believe that Lowe's' advertised discounts represent a reduction from the regular and recent former prices of the Products in the amounts advertised.

131. Moreover, Plaintiffs and the Class could not have, with the exercise of reasonable diligence, discovered Lowe's' false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover—especially regarding Products that are purchased infrequently such as major appliances and window blinds and shades.

132. Consumers who shopped at Lowe's would have no way of knowing, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the Products they viewed and purchased. Consumers would have no way to know, with the exercise of reasonable diligence, that the advertised Lowe's regular prices (i.e., the strikethrough reference prices) were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false.

133. Plaintiffs' counsel only found evidence for Lowe's' deceptive pricing scheme by conducting an extensive and expensive investigation that no reasonable person would conduct.

134. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Lowe's' records and can be easily ascertained from those records.

135. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

        a.     Whether the alleged conduct of Lowe's violates the Washington Consumer Protection Act (RCW Chapter 19.86);

        b.     Whether the alleged conduct of Lowe's violates 16 C.F.R § 233.1 *et seq.*;

        c.     Whether Plaintiffs and the Class have suffered injury as a result of Lowe's' unlawful conduct;

        d.     Whether Lowe's should be ordered to pay damages to Plaintiffs and to each Class member;

        e.     Whether Lowe's should be ordered to pay treble damages to Plaintiffs and to each Class member; and

        f.     Whether Lowe's should be enjoined from engaging in the unlawful conduct alleged herein.

136. **Typicality.** Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Lowe's' standard practices and schemes, bring the same claims, and face the same potential defenses.

137. **Adequacy.** Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

138. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would

be impractical and would not make economic sense for Class members to seek individual redress for Lowe's' conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

139. By its conduct and omissions alleged herein, Lowe's has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

140. Lowe's is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiffs against Lowe's in this Complaint arises from and are limited to statements or conduct by Lowe's that consist of representations of fact about Lowe's' business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Lowe's' goods or the statements are or were made in the course of delivering Lowe's' goods. Each cause of action brought by Plaintiffs against Lowe's in this Complaint arises from and is limited to statements or conduct by Lowe's for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

### COUNT I
### Violation of the Washington Consumer Protection Act
### RCW Chapter 19.86

141. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

142. Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

143. The Washington Consumer Protection Act (the "CPA"), RCW 19.86, is Washington's principal consumer protection statute. The CPA broadly declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

144. The CPA allows any person "who is injured in his or his business or property by a violation of RCW 19.86.020" to bring an action to enjoin further violations and to recover actual damages (which may be trebled), costs, and attorneys' fees. RCW 19.86.090.

145. Lowe's engages in the conduct of trade or commerce. For example, and without limitation, Lowe's engages in the sale of assets (including the tangible personal property that Lowe's sells) and engages in commerce directly or indirectly affecting the people of Washington.

146. Lowe's' acts and omissions alleged herein, including advertising false reference prices and false discounts, constitute unfair or deceptive acts or practices which directly or indirectly affect the people of the State of Washington, and which caused injury to Plaintiffs and the Class members' business or property.

147. Lowe's' alleged conduct is <u>deceptive</u> because it "is likely to mislead a reasonable consumer." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 50, 204 P.3d 885, 895 (2009). Further, "[t]he capacity of a marketing technique to deceive is determined with reference

- 40 -

to the least sophisticated consumers among us." *Keithly v. Intelius*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011); *see also Panag*, 204 P.3d at 895 (same).

148.    Additionally, Lowe's' acts and practices are directly contrary to the FTC regulations by which the CPA states the Court should be guided, including the FTC regulation on former price comparison advertising (16 C.F.R § 233.1), as described in detail above.

149.    Lowe's' alleged conduct also constitutes <u>unfair</u> acts or practices under the "substantial injury test" because Lowe's' acts or practices (1) cause substantial injury to consumers (2) which is not reasonably avoidable by consumers themselves and (3) not outweighed by countervailing benefits to consumers or to competition. *See Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024). As detailed above, Lowe's' false reference price and false discount representations caused substantial injury to consumers. Consumers could not reasonably avoid these injuries because Lowe's' false advertising was hidden from consumers. And, Lowe's' false advertising has no countervailing benefits to consumers or to competition—let alone any that would outweigh the harm done.

150.    Lowe's' alleged conduct also constitutes <u>unfair</u> acts or practices because Lowe's' conduct "is in violation of public interest." *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024); *see also Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 787, 295 P.3d 1179, 1187 (2013) (same). As detailed above, Lowe's' false reference price and false discount representations deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses. In addition to harming consumers, Lowe's' false advertising also negatively affects the integrity of competition in retail markets and harms honest competitors that sell the same or similar products, or otherwise compete in the same market.

151.    With respect to any omissions, Lowe's at all relevant times had a duty to disclose the information in question because, inter alia: (a) Lowe's had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Lowe's concealed material

information from Plaintiffs and Class members; and (c) Lowe's made partial representations which were false and misleading absent the omitted information.

152.     Lowe's' unlawful conduct was intended to, or had the capacity to, deceive a substantial portion of the public.

153.     Lowe's' misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

154.     Lowe's' false reference price and false discount representations are likely to mislead a reasonable consumer, and in fact did mislead Plaintiffs.

155.     Lowe's false "limited-time" sales and sale events are likely to mislead a reasonable consumer, and in fact did mislead Plaintiffs.

156.     As a direct, substantial, and/or proximate result of Lowe's' unlawful conduct, Plaintiffs and Class members suffered injury to their business or property.

157.     Plaintiffs and Class members reasonably relied on Lowe's' material misrepresentations, and would not have purchased Lowe's' Products at the prices that they paid had they known the truth.

158.     Plaintiffs and Class members did not receive the benefits of their bargain. Plaintiffs and Class members did not enjoy the actual discounts Lowe's represented and promised to them. Plaintiffs and Class members did not receive Products that were worth the inflated amount that Lowe's represented to them; the Products did not regularly sell for, and were not actually worth, the fictitious reference price advertised by Lowe's.

159.     By its conduct and omissions alleged herein, Lowe's caused the demand for the Products to be artificially increased and caused all customers, including Plaintiffs and Class members, to pay price premiums to Lowe's. Put differently, as a result of its misrepresentations, Lowe's has been able to charge a price premium for the Products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Lowe's would have had to charge less for the Products in order to enjoy the same level of demand.

160.     Treble damages are appropriate under these circumstances because, without limitation, Lowe's' false discount advertising scheme has been "an ongoing course of conduct affecting thousands of consumers" and thus has a "strong public interest impact." *See Matheny v. Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1225 (E.D. Wash. 2009). Lowe's' intent in perpetrating the scheme has been to trick consumers into believing that the Products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special limited-time bargain. Lowe's has perpetrated this illegal scheme in order to induce consumers to purchase the Products and to charge more for its Products than it otherwise could have charged.

161.     The acts and omissions of Lowe's pled herein are injurious to the public interest because said acts and omissions: (a) injured other persons in addition to Plaintiffs; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons. *See* RCW 19.86.093(3).

162.     The unlawful acts and omissions pled herein were committed in the course of Lowe's' business. The unlawful acts and omissions pled herein were, are and continue to be part of a pattern or generalized course of conduct. The acts and omissions of Lowe's pled herein were and are not reasonable in relation to the development and preservation of business.

163.     Lowe's' conduct has caused substantial injury to Plaintiffs, Class members, and the general public.

164.     **Permanent public injunctive relief.** Plaintiffs, acting as private attorneys general, seek public injunctive relief under the CPA to protect the general public from Lowe's' false advertisements, misrepresentations, and omissions.

- 43 -

165.    The Washington Supreme Court treats consumers as "private attorneys general," and has held that consumers' ability to enjoin unlawful business practices is a primary purpose of the CPA:

> Private actions by private citizens are … an integral part of CPA enforcement. **Private citizens act as private attorneys general** in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. **Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests**.

*Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007) (emphasis added).

166.    This type of injunctive relief has been referred to as "public injunctive relief." *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 90 (2017) ("[P]ublic injunctive relief … is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public.") (quoting *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 988 P.2d 67, 74 (1999)). In fact, the *Broughton* court likewise referred to consumers seeking public injunctive relief as "private attorneys general." *See Broughton*, 21 Cal. 4th at 1077.

167.    Lowe's' misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Lowe's absent a permanent public injunction. Accordingly, Plaintiffs seek an order enjoining Lowe's from committing the unlawful practices alleged herein.

168.    The balance of the equities favors the entry of permanent public injunctive relief against Lowe's. Plaintiffs, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Lowe's' ongoing false advertising absent the entry of permanent public injunctive relief against Lowe's.

169.    Plaintiffs lack an adequate remedy at law to prevent Lowe's from engaging in the unlawful practices alleged herein. Plaintiffs would purchase Products from Lowe's again if they could have confidence regarding the truth of Lowe's' prices and the value of its Products.

Plaintiffs will be harmed if, in the future, they are left to guess as to whether Lowe's is providing a legitimate sale or not, and whether Lowe's' Products are actually worth the amount that Lowe's is representing.

170. Also, monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: <u>First</u>, damages will not prevent Lowe's from engaging in its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what Product(s) Plaintiffs may want or need in the future. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiffs, and the general public for future violations of the law by Lowe's.

## <u>PRAYER FOR RELIEF</u>

Plaintiffs, on behalf of themselves and the proposed Class, request that the Court order relief and enter judgment against Lowe's as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

2. Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period back to the date Lowe's first engaged in the unlawful conduct alleged herein (which based on counsel's investigation, is at least April 2021 and is likely earlier);

3. Declare that Lowe's' conduct alleged herein violates the CPA;

4. Order Lowe's to pay actual damages to Plaintiffs and Class members in an amount to be determined at trial but which is more than $5 million, pursuant to, without limitation, RCW 19.86.090;

- 45 -

5.    For an increase in the award of actual damages to Plaintiffs and Class members of up to treble the actual damages pursuant to, without limitation, RCW 19.86.090;

6.    Permanently enjoin Lowe's from engaging in the unlawful conduct alleged herein;

7.    Order that Lowe's maintain the following records for each daily Product[4] offering in its retail stores and on its website for at least two years from the date of each advertisement and/or offer for sale of the Product, for auditing purposes to ensure compliance with the ordered injunctive relief: (1) the advertised reference price for each Product; (2) the offer price and/or net selling price of each Product; and (3) any discount percentage and/or any other discount that was advertised and/or applicable to each Product;

8.    Retain jurisdiction to monitor Lowe's' compliance with the permanent injunctive relief;

9.    Order any other equitable relief the Court deems appropriate;

10.   Order Lowe's to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

11.   Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted on November 7, 2024, by:


WEAVER BENNETT & BLAND, P.A.

By: _/s/ Michael David Bland___
      Michael David Bland
Michael David Bland, NC Bar No. 008179
dbland@wbbatty.com
David B. Sherman Jr., NC Bar No. 47153

---

[4] "Products" are defined in this Complaint as Bali and Levolor blinds and shades, and major appliances such as refrigerators, ranges, dishwashers, microwaves, wall ovens, cooktops, freezers, washers, and dryers.

- 46 -

dsherman@wbbatty.com
196 North Trade Street
Matthews, North Carolina 28106
Tel: (704) 844-1400
Fax: (704) 845-1503


SIGMON, CLARK, MACKIE, HANVEY &
FERRELL, P.A.

Andrew J. Howell, NC Bar No. 42921
andy.howell@sigmonclark.com
R. Jason White, NC Bar No. 31860
jason.white@sigmonclark.com
Post Office Drawer 1470
Hickory, North Carolina 28603
Tel: (828) 328-2596
Fax: (828) 328-6876


HATTIS & LUKACS
Daniel M. Hattis (*pro hac vice* to be submitted)
dan@hattislaw.com
Paul Karl Lukacs (*pro hac vice* to be submitted)
pkl@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: (425) 233.8650
Fax: (425) 412.7171

*Attorneys for Plaintiffs and the Proposed Class*